(March 5, 1901.)

## STATE v. SEYMOUR.

### [63 Pac. 1036.]

GRAND LARCENY—JUDGMENT—REVERSAL—EVIDENCE.—When, on an appeal, the judgment is reversed on the ground that the evidence is insufficient to justify the verdict, the trial court, on the motion of the county attorney, should dismiss the case when it is shown that the state has no other or further evidence than that adduced on the first trial.

SECOND TRIAL—ADDITIONAL EVIDENCE.—*Held*, in this case that the state did not produce, on the second trial, further or additional material evidence than that produced on the first trial.

REBUTTAL.—Under the facts of this case, it was error to refuse to allow the defendant to introduce, in rebuttal, evidence contradicting certain statements sworn to by a witness on behalf of the prosecution.

JURY—INSTRUCTION TO.—When a judgment has been reversed on the ground that the evidence is insufficient to sustain the verdict, and the case is remanded, and a retrial is had, if no further or additional evidence is produced on the trial of the defendant's guilt, the court ought to instruct the jury to return a verdict of acquittal.

EXCUSING COUNTY ATTORNEY FROM TESTIFYING.—It is error to excuse the county attorney from testifying on behalf of the defendant simply because he does not wish to do so.

DISCHARGE OF DEFENDANT.—When it is made to appear that the state cannot produce additional material evidence of the guilt of one tried for a crime, and this court reverses a judgment of conviction, on the ground of the insufficiency of the evidence to support the verdict, this court will order a discharge of the prisoner.

(Syllabus by the court.)

APPEAL from District Court, Fremont County

Caleb Jones and Hawley & Puckett, for Appellant.

There is absolutely no evidence to sustain the verdict, and it must be presumed to have been rendered under the influence of passion and prejudice, and should be set aside. (*State v. Nesbit,* 4 Idaho, 548, 43 Pac. 66; *State v. Crump,* 5 Idaho, 166, 47 Pac. 814; *State v. Mason,* 4 Idaho, 543, 43

Pac. 63.)    Section 7057 of our Penal Code is in effect section 496 of the California code.   The supreme court of California holds that receiving stolen property is a distinct and specific offense under that section, and that although a defendant may receive stolen property and assist in disposing of it, for the benefit of himself and the real thief, he cannot be convicted either of larceny or as an accessary after the fact, but must be tried for the offense of receiving the stolen property only. (*People v. Stakem,* 40 Cal. 599; *People v. Fagan,* 98 Cal. 230, 33 Pac. 60; *People v. Maxwell,* 24 Cal. 14; *People v. Ribolsi,* 89 Cal. 492, 26 Pac. 1082; *People v. Avila,* 43 Cal. 196.) Since the former decision by this court in this cause heretofore cited, this court has been called upon to pass on a similar case, and has, we urge, affirmed every contention we make herein. (*State v. Marquardsen,* ante, p. 352, 62 Pac. 1034.)    The fourth error complained of is the refusal of the court to compel Judge Cochran, county attorney, to testify as a witness on sur-rebuttal, when called by defendant.   We are entitled, if we so desire, to call upon the judge of the court himself to give evidence in this regard.   Section 5956 of the Revised Statutes expressly provides that "all persons except those specified in the two succeeding sections, who are in possession of their faculties, may be witnesses."

Frank Martin, Attorney General, for the State.

The jury is the judge of the credibility of the witnesses, and the weight to be given to the evidence.   A careful examination of the testimony in this case, we think, will convince the court that the jury arrived at the verdict on conflicting evidence, and on well-settled rules of this court, such verdict will not be disturbed on appeal.   Below we cite a few of the many decisions of this court establishing this principle.   (*Simpson v. Remington,* 6 Idaho, 681, 59 Pac. 360; *Bonner v. Powell,* ante, p. 104, 61 Pac. 138; *Sears v. Flodstrom,* 5 Idaho, 314, 49 Pac. 11; *Murphy v. Montandon,* 4 Idaho, 320, 39 Pac. 195; *United States v. Camp,* 2 Idaho, 231, 10 Pac. 226; *Monarch G. & S. M. Co. v. McLaughlin,* 1 Idaho, 618; *Mootry v. Hawley,* 1 Idaho, 543; *People v. Lewis,* 124 Cal. 551, 57 Pac.

470; *People v. Uh Dong,* 106 Cal. 83, 39 Pac. 12; *State v. Haverly,* 4 Idaho, 484, 42 Pac. 506; *Chamberlain v. Woodin,* 2 Idaho, 642, 23 Pac. 177.) A substantial conflict is in no way dependent upon the preponderance of the testimony, and even if the evidence apparently preponderates against the verdict, it would not justify this court in overturning it. (*Smith v. Thomas,* 121 Cal. 533, 54 Pac. 71; *Meyer v. G. W. Ins. Co.,* 104 Cal. 381, 38 Pac. 82; *Livingston v. Packing Co.,* 103 Cal. 258, 37 Pac. 149; *Bradford v. Woodworth,* 108 Cal. 684, 41 Pac. 797.) It is well established both by our statutes and a long line of decisions of this court that a judgment will not be reversed by this court for an error committed at the trial, unless some substantial right of the defendant was injured thereby. (Rev. Stats., secs. 7687, 8236; *In re Marshall,* 6 Idaho, 516, 56 Pac. 470; *State v. Reed,* 3 Idaho, 754, 35 Pac. 706; *State v. Ellington,* 4 Idaho, 529, 43 Pac. 60; *State v. Larkins,* 5 Idaho, 200, 47 Pac. 945.)

SULLIVAN, J.—The defendant was convicted of the crime of grand larceny, and from the judgment of conviction and order denying a new trial appealed to this court at the May term, 1900. (See 61 Pac. 1033.) The court there held that the evidence was insufficient to establish the guilt of the defendant, and the cause was remanded to the lower court. The cause was again brought on for trial in the district court at the November term, 1900. The county attorney thereupon made a motion to dismiss the case, which motion was in writing, and is as follows: "Henry D. Wilding was duly called and sworn, as a witness on the part of the prosecution, and testified as follows: Counsel for defendant at this time objected to the introduction of any testimony in this case, for the reason that the prosecuting attorney had theretofore asked the privilege and made a motion to dismiss this case for the reasons stated in said motion, which are as follows: 'In the District Court of Fremont County, State of Idaho. State of Idaho, Plaintiff, v. Emery H. Seymour, Defendant. Now comes J. E. Cochran, county attorney of Fremont county, and asks that the within case be dismissed for the following rea-

sons: 1. Because, upon the evidence submitted upon the former trial, the supreme court of the state has held insufficient to sustain a verdict of guilty, and has remanded it for trial which means, impliedly, if we have or can supply more competent evidence; otherwise, of course, they mean that he shall be discharged. This prosecution, being fraught with great interest to the people of the county, has been very industriously and vigilantly prepared and prosecuted by all the officers of this and the former county administration whose duty it was so to do, and every particle of legitimate evidence that any of us could procure we did, and it was well and forcibly presented at the former trial, and consisted of the testimony of witnesses whom the jury knew, and who comprise many of our best and most highly respected citizens, including our ex-sheriff and our present sheriff, and leading representative farmers of the county. From these witnesses the prosecution has not an additional fact that can be presented, and nothing from any witnesses of their standing or integrity. The only further testimony will be such as Edward H. Trafton, his wife, and one Ben Williams may swear to, and what that will be I think no man can know until it proceeds from the mouth on the witness-stand, and from my knowledge of them would not believe them under oath; and I here apologize to the court for asking their indorsement on the information, knowing them as I do now, their character and reputation, but it was done by request, and without knowledge of what their testimony will be, and without stopping then, as I should have done, and considered fully the matter. At the former trial of this case Trafton was here as a witness for the defendant, and, further, officiated in the capacity of attempting to get witnesses for the state to withhold testimony, and this court, on hearing of that action, ordered me to investigate the facts, which I did, and prosecuted him for that offense, and convicted him of it in the probate court. Since that time one of the Seymour boys was a witness, and an unwilling one, on the part of the state against this same Trafton on a charge of petit larceny; and, when he was convicted for that offense, he, in my presence and others, stated that he would get even for that, if not on him, he would on

Emery Seymour, this defendant; and to this day he is under bonds to appear for preliminary examination on a charge of grand larceny, and the records of the criminal courts of this county abound in cases of the state of Idaho against Edward H. Trafton, and his reputation is such that he cannot and ought not to be believed. Of Mrs. Trafton, I have but to say that she is his wife, and has always been a witness when he was, and from their testimony I conclude that they are as man and wife are sometimes described, "as the twain being one flesh." Ben Williams I understand to be a fugitive from justice, and to escape prosecution for grand larceny, and not a stranger to the criminal dockets of this county, and I am informed is not and will not come into the jurisdiction of this court. Therefore, in view of the decision of the supreme court of this state, regardless of individual opinion as to its correctness, we will all treat it with the respect and force to which it is entitled, and, in view of the fact that we have no further reputable evidence, I am of the opinion that the necessarily great expense that its further prosecution will entail on the county ought not to be encouraged. While the court and all of its officers have done all that could be done, I feel that we would not now be justified in its further prosecution, even if a conviction should be possible from the testimony of witnesses of the character of the ones last indorsed on the information. Respectfully submitted, J. E. Cochran.' "

The county attorney therein states that the prosecution had no further reputable evidence than was given on the former trial, and that, as the supreme court had held that the evidence at the former trial was not sufficient to convict for that reason, he moved to dismiss said case. The record shows that the county attorney acted in perfect good faith, and in line with his duty, in making said motion. (See Cooley's Constitutional Limitations, 5th ed., p. 379, and note 3.) The court denied the motion, and proceeded with the trial. The defendant was convicted, and judgment of imprisonment imposed. A motion for a new trial was denied, and this appeal is from the judgment and the order denying a new trial.

The evidence is substantially the same as that given on the former trial.   However, the state produced as witnesses a Mrs. Trafton, William Lyman and Seth Ellsworth, who had not testified on the former trial.   Witness Bruce testified that he and one Ben Williams, on their trip from Teton Basin, about June 15, 1897, from whence they drove the animal alleged to have been stolen, with several others, stopped at Trafton's or Harrington's ranch overnight, and put the cattle they were driving in a corral there for the night.   Mrs. Trafton was called to show that witness Bruce and said Williams did not stop overnight at Trafton's, as testified to by Bruce.   She testified that Bruce and Williams did not stop overnight at Trafton's ranch in June, 1897.   On cross-examination she testified that they might have stopped there on the 14th or 15th of June.   It appears that this witness refreshed her memory from a book that was considerably mutilated by having leaves torn out.   William Lyman, brother of Mrs. Trafton, also testified that Bruce never stopped at Trafton's in the month of June, 1897, and put cattle in the corral, to his knowledge; but that it would have been possible for them to have stopped there all night without his knowing it, as he was away some of the time.   Five witnesses testified that Mrs. Trafton's reputation for truth and integrity was bad.   Counsel for defendant offered to prove by Captain Aller and his son Amos that said Aller and son stopped at the said Trafton ranch overnight about the 15th of June, 1897, and that one Ben Williams and D. C. Bruce stayed overnight at the residence and ranch of said Trafton, and that they drove four head of cattle to that ranch, placed them in the corral that night, and the next morning turned them out of the corral and drove them toward St. Anthony.   The county attorney interposed thereto, on the ground that said testimony was not rebuttal or sur-rebuttal testimony, but evidence in chief on the part of the defense, and cumulative, which objection was sustained by the court. It was prejudicial error to reject said testimony, provided the question whether said Bruce and Williams stopped at said Trafton's, as testified to by Bruce, was a material point in the case. As it went to the truthfulness of witness Bruce as to the place

from whence, and the route over which, the animal alleged to have been stolen was driven, we think it had a bearing in the case, and was proper to go to the jury. The testimony of said witness Lyman shows that Bruce and Williams might have stopped at Trafton's, as sworn to by Bruce, and Lyman not have known it. The witness Bruce described Ben Williams as having light hair, while Seth Ellsworth, a witness for the prosecution, testified that his complexion was darker than medium, and that he thought his hair was nearly black.

The testimony above set forth of the witnesses, Mrs. Trafton, Lyman and Ellsworth, is all of the evidence introduced by the state in addition to the evidence on the first trial of the case, and does not materially change the evidence on which the defendant was first convicted. This court held on the former appeal that that evidence was not sufficient to sustain the verdict. Mrs. Trafton was most thoroughly impeached, and, aside from that, the defendant offered to show, by two disinterested witnesses, that Bruce and Williams did stop overnight at the Trafton ranch about June 15, 1897. However, Mrs. Trafton testified on cross-examination that they might have stopped there on the 14th or 15th of June, 1897. The color of Ben Williams' hair was an immaterial matter, and the difference in the opinions of the two witnesses who testified on that point can have no important bearing in this case.

The attorney general quotes from the testimony of the defendant, and the quotations, taken alone, would indicate that the defendant had testified, on direct examination, that Williams had purchased several head of cattle for him, and on cross-examination that he had purchased but one. But that testimony, as we read it, states that Williams only purchased one animal on his trip to the Teton Basin. He testified as follows: "That is the only animal that he bought and delivered. . . . . When he came in from Teton Basin he returned the money I had given him. He paid $17 for the critter. . . . . He did not buy any more cattle at all." In other words, that was the only one that he bought on that trip.

As there is no material change in the evidence from that given on the first trial, the cause must be determined upon the same

evidence that was before us on the former appeal, and, as the law of the case was announced in the decision on that appeal, it contains the law of the case on this appeal so far as it applies to the insufficiency of the evidence to sustain the verdict. In his motion to dismiss, the county attorney stated to the court that the state had no further reputable evidence than was given on the former trial, and the evidence submitted by him fully bears out that statement, and the case should have been dismissed, or, at least, the court should have instructed the jury to bring in a verdict of not guilty at the close of the evidence.

Several other errors are assigned, but it is only necessary for us to further notice one of them. Counsel for the defendant called the county attorney as an impeaching witness against Mrs. Trafton. The county attorney thereupon stated that he did not wish to testify. The court thereupon said that he need not testify if he did not want to, he being county attorney. The county attorney replied that he did not wish to, to which ruling the defendant duly excepted. On what theory the county attorney was excused from testifying is not made to appear. It certainly was not on the ground that it would incriminate him, and we know of no other reason under our law why the county attorney, or anyone, even the judge himself, may not be compelled to testify on behalf of one on trial for a crime. Both by the federal constitution and that of this state, the defendant has the right to process to compel the attendance of witnesses in his behalf. It was error for the court to excuse the county attorney from testifying in said case, as the defendant only desired his testimony in the impeachment of one of the witnesses for the state. As it is apparent that the state cannot produce other evidence of defendant's guilt than that given on the first trial of this case, the judgment of the district court must be reversed, and the appellant, Emery H. Seymour, discharged from custody; and it is so ordered.

Quarles, C. J., concurs.

STOCKSLAGER, J., Dissenting.—I cannot concur with my associates in this case. The facts are stated in the opinion by Justice Sullivan, concurred in by Chief Justice Quarles;

hence unnecessary here only as may become necessary to refer to them in expressing my views and giving my reasons for dissenting. As is shown by the opinion, this is the second time this case has been to this court on the question of the sufficiency of the evidence to support the verdict and judgment of the trial court, no errors of law being assigned or presented to this court. The record does not disclose that the appellant ever made an application for a change of the place of trial from Fremont county, alleging bias and prejudice of the people of that county, or the presiding judge of that district, against him. This being true, the presumption is that appellant has had two fair and impartial trials by his countrymen, residents of the county wherein he resided, and was engaged in business at St. Anthony, the county seat of said county. At each of said trials a verdict of guilty of grand larceny was returned against him, and he was sentenced to servitude in the state penitentiary by the presiding judge of said district. It is a well-settled rule, frequently announced by this court, that, where there is a conflict of evidence on material issues involved in the trial, the verdict of the jury and the judgment of the lower court will not be disturbed on appeal to this court. This rule not only prevails in this jurisdiction, but is almost, if not quite, universal. In each of the trials of this case in the lower court, the juries that returned verdicts of guilty against the appellant had the opportunity of looking the witness in the face while testifying, observing their manner and conduct, and determining the truth or falsity of their evidence. The court evidently instructed them that they must give the defendant the benefit of every doubt, and only return a verdict of guilty when they were satisfied of guilt beyond all reasonable doubt. The judge who presides over that district, and who had the same opportunities to observe the testimony upon which these convictions were had, refused to set the verdicts aside. The presumption is that he, being a sworn officer of the state, performs his duty as he sees it, and I think we should be very careful in disturbing his judgment, especially where it is shown by the record that the appellant had two opportunities to establish his innocence, and failed in both. In this court we

have simply the printed record to guide us, no opportunity to see the witnesses, and observe their manner and conduct, and thereby determine their character, as well as the truth or falsity of their testimony.

Now, as to the facts as disclosed by the record in this case. On the twenty-seventh day of June, 1897, appellant was arrested upon the charge of grand larceny, and after preliminary examination, on the nineteenth day of February, 1900, J. E. Cochran, the county attorney of Fremont county, filed an information against him, charging him with the larceny of a cow in said county. A trial was had, conviction followed, and, on appeal to this court, the judgment of the trial court was reversed, and the case remanded for further proceedings. In December, 1900, another trial was had, conviction followed, and this appeal. Appellant testifies that he drove the cow in dispute into his pasture, thereby placing himself in a position where he must explain such possession to the satisfaction of the jury. He tells the same story that has been heard in every trial court in this state, and in fact all states where trials of this character are had, in every case where the possession of stolen animals is traced to the possession of the party accused. The purchase is always from a stranger. It must necessarily be from a stranger, as he cannot be brought face to face with the accused to contradict him. Where is the necessity to look further into the evidence? His explanation was unsatisfactory to the jury and the judge who tried the case in the first trial, and the same is true of the second trial. What is the difference whether the jury believed Mrs. Trafton or not? It is evident from their verdict that they did not believe that the possession of the cow by the appellant was honestly acquired, and his explanation of such possession was unsatisfactory to them. They must have believed Mrs. Trafton told the truth, even though her reputation for truth and veracity was shown to be bad by five witnesses. The most depraved person (and we do not wish to be understood as saying she is) may tell the truth, and the jury may or may not have believed her. That was their special province, and no one can control it. It is for the express purpose of passing upon such testimony that the jury sys-

tem prevails all over the civilized world, and their verdicts should carry great weight with the courts.

It cannot be said that there was any malice or ill-will toward the defendant by the jury, as it recommended him to the mercy of the court. This may also be said of the court that pronounced the sentence, and before whom the case was tried. The sentence is for three years, and might, under the law, have been fourteen years. I do not think this case should be reversed on the ground of insufficiency of the evidence to warrant the verdict and judgment. I agree with my associates that the trial court should have required the county attorney to testify when called upon by the defendant. I also agree with them that the court should have permitted the two witnesses, Captain Aller and his son, to testify in rebuttal.