Travers, J.
INTRODUCTION
The Defendant, Metropolitan Property and Casualty Insurance Company (MPC) filed a motion for protective order on July 2,1997. This motion led to the filing of two additional discovery motions[3] by Plaintiffs, Jerilyn Hogan and Kenneth Hogan (the Hogans).
By way of its motion, MPC seeks a protective order to prevent (1) its keeper of records from delivering by hand duplicative discovery requests, (2) the production of documents protected by attorney-client and work product privileges, (3) the production of irrelevant or burdensome documents, and (4) the production of any discovery to the Hogans’ attorney, Terance Perry or the firm of Brendan J. Perry and Associates, P.C. The Hogans oppose MPC’s motion for a protective order.
For the following reasons, a protective order is issued in accordance with the provisions set forth below.
DISCUSSION
The procedural history of this case is set forth in this Court’s Memorandum of Decision dated October 31, 1997, and is firlly incorporated herein by reference. This Court has broad discretion to issue or deny a protective order. Wansong v. Wansong, 395 Mass. 154, 156 (1985), citing, Matter of Roche, 381 Mass. 624, 637 (1980). “In determining whether a protective order should issue, a judge must assess the competing interests of preventing ’’annoyance, embarrassment, oppression, or undue burden or expense [Mass.R.Civ.P. 26(c)], and considerations of an efficient and just resolution of the action." Wansong, 395 Mass. at 156, citing Roche, 381 Mass. at 637. A protective order may issue when the motion is grounded by reasons which would otherwise be permitted as objections to the requested discovery. Caron v. General Motors Corp., 37 Mass.App.Ct. 744, 747 (1994) (noting the federal courts’ interpretations of analogous federal rules) (citations omitted).
MPC seeks an order protecting them from serving duplicative, irrelevant, burdensome and privileged documents upon the Hogans. In addition, MPC requests that it be protected from serving discovery upon counsel for the Hogans, as counsel for the Hogans should be disqualified. MPC’s request for a protective order is examined in light of the above standards.
1. Duplicative Requests, Privileged Documents and Irrelevant or Burdensome Requests
“The conduct and scope of discovery is within the sound discretion of the judge." Solimene v. B. Grauel & Co., KG, 399 Mass. 790, 799 (1987) (citations omitted). A party may object to the production of discovery which is privileged or irrelevant. See G.S. Enter., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 270-71 (1991); Mass.R.Civ.P. 26(b)(1). “Generally, discovery is permissible of any non-privileged material which is relevant to the pending action and reasonably calculated to lead to the discovery of admissible evidence. Mass.R.Civ.P. 26(b)(1)." Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 414 Mass. 609, 615-16 (1993).
i.Duplicative Document Requests
The Hogans served upon MPC’s keeper of the records a subpoena requiring the production of documents at deposition. The requested documents were identical to the request served upon MPC. MPC has since delivered the requested documents not covered by objections. In the interests of efficiency and financial management, MPC need not again provide the same documents.
ii.Attorney-Client and Work-Product Privileges
MPC has objected to the production of certain documents, as the requested discovery falls under the work-product privilege or the attorney-client privilege. In its memorandum in support of its motion for a protective order, MPC details the privileges claimed and the reasons for the exercise of such privileges.
The Hogans failed to offer support for their opposition to the protective order with any justification for the requested documents. See Ward v. Peabody, 380 Mass. 805, 817 (1980). Rather, the Hogans sought to have MPC’s objections stricken. For the reasons set forth in this Court’s Memorandum of Decision dated October 31, 1997, the objections were permitted to stand. Because MPC has demonstrated the appropriateness of its objections, MPC is protected from disclosing the privileged documents.[4]
iii.Irrelevant Documents
Discovery is relevant when it ”encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case . .. [Discovery itself is designed to *176 help define and clarify the issues.” Cronin v. Strayer, 392 Mass. 525, 534 (1984), quoting, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978), citing, Hickman v. Taylor, 329 U.S. 495, 501 (1947). While MPC has demonstrated that the requested documents are irrelevant, the Hogans have failed to substantiate how these documents may lead to other issues in the case. See Cronin, 392 Mass. at 534.
2. Disqualification of the Hogans’ Attorney
MPC, in its Motion for a Protective Order, sought disqualification of Attorney Terance Perry (Attorney Perry) alleging that he is a necessary witness to be called at trial. In order to resolve MPC’s request that Attorney Perry be disqualified, this Court ordered on October 21, 1997, that counsel for each party submit an affidavit and memorandum detailing factual and legal support for or against disqualification of Attorney Perry. From the supplemental documents, additional information was provided regarding Attorney Perry’s role as a potential witness in the trial in this matter.
Attorney Perry was employed by the Hogans to represent them in a personal injury matter originating when Ms. Hogan was involved in an automobile accident. Attorney Perry represented the Hogans in that matter. The suit resulted in a settlement with the defendant driver’s insurance company for the full value of the driver’s policy. Attorney Perry contacted MPC, the Hogans’ insurer, and obtained permission to settle the claim with the driver’s insurance company. At that time, Attorney Perry reserved the Hogans’ rights to pursue an underinsured claim against the MPC policy.
Attorney Perry communicated with MPC and the Defendant Laurie Marshall (Marshall), an MPC claims adjuster, regarding settlement of the underinsurance claim. The claim went unsettled. As a result of the inability to settle the underinsurance claim, the Hogans filed the present action. It is alleged in the Complaint in this action that MPC and Laurie Marshall breached their contractual obligations and acted in violation of G.L.c. 176D and c. 93A in failing to properly and promptly resolve the underinsurance claim.
Marshall states, by way of affidavit, that as the adjuster handling the underinsurance claim she made numerous requests for medical records to Attorney Perry. Marshall communicated only with Attorney Perry as counsel for the Hogans, and not with the Hogans directly. Marshall states that she relied upon Attorney Perry’s statements that he would supply the relevant medical records, but never received any records from Attorney Perry.[5] Marshall requested the records as part of the evaluation and investigation of the claim.
Based upon the above facts, MPC argues that Attorney Perry is a material witness to both the prosecution and defense of the allegations set forth in the Complaint. MPC argues that because the Complaint is founded upon communications (or lack thereof) between Attorney Perry, MPC and Marshall, Attorney Perry cannot present a case without himself taking the stand. Attorney Perry contends that the applicable rules of ethics are not violated by virtue of his ongoing representation of the Hogans; and further, if he were disqualified as counsel for the Hogans, the Hogans would suffer hardship because they would be unable to continue with their counsel of choice in whom they have trust and confidence.
If Attorney Perry is obligated to withdraw from his representation of the Hogans, it will be because Supreme Judicial Court (S.J.C.) Rule 3:07, Canon 5, DR 5-102 requires such action. DR 5-102 states:
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated inDR5-101(B),(l) through (4).
(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.
(Emphasis added.) DR 5-101(B)(1) through (4) state:
A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
DR 5-102 was designed to be a self-executing rule and “will itself have a regulatory effect.” Serody v. Serody, 19 Mass.App.Ct. 411, 413 (1985), citing, Borman v. Borman, 378 Mass. 775, 788 (1979). The Canons of Ethics are not tactical weapons at the hands of opposing counsel. See, Serody, 19 Mass.App.Ct. at 414. “When needless disqualification occurs as a result of [abuse of the code of ethics], the very rules intended to prevent public disrespect for the legal profession foster a more dangerous disrespect for the legal process.” Borman, 378 Mass. at 787. To prevent the abuses which lead to a degradation of the legal profes *177 sion, the Supreme Judicial Court concludes, the Code of Ethics is “self-executing” in that attorneys are expected “to know and comply with its provisions.” Id.
Whether an attorney should be disqualified is a complex question, not to be decided without thoughtful consideration by the trial judge. See Serody, 19 Mass.App.Ct. at 412-13. Although an attorney “is competent to testify either for or against his client,” Kendall v. Atkins, 374 Mass. 320, 323 (1978), an attorney acting as both counsel and a witness at trial is disapproved by the legal profession. See Black v. Black, 376 Mass. 929 (1978) (Rescript). “In any event, judges should not permit this practice absent exceptional circumstances. Attorneys finding themselves in the position of trial counsel and witness should obtain substitute counsel well in advance of trial.” Id.
Where a dispute exists over whether counsel should testify as a witness, the trial judge should, rather than use his discretion, “defer to the best judgment of counsel and his client.” Borman, 378 Mass. at 790, citing, J.D. Pflaumer, Inc. v. Dep’t of Justice, 465 F.Sup. 746, 747 (E.D. Pa. 1979). See also Serody, 19 Mass.App.Ct. at 413; Filippone v. Mayor of Newton, 392 Mass. 622, 630 (1984). The Court may disregard counsel’s best judgment and require disqualification “(o]nly when a present intention to forgo the testimony of counsel appears obviously contrary to the client’s interests . . .” Borman, 378 Mass. at 791.
To require counsel to disqualify himself, the party seeking disqualification must first show that the attorney-witness’s testimony is “prejudicial to the client.” Borman, 378 Mass. at 792. See also Kendall, 374 Mass. at 324. In the present case, MPC seeks the removal of Attorney Perry as counsel for the Hogans. While every motion to disqualify opposing counsel is looked upon with suspicion,[6] in this case there is sufficient evidence to warrant an in-depth examination into the merits of the motion. MPC states that all communications regarding the underinsurance claim were between MPC, Marshall and Attorney Perry. MPC alleges that the reason for the delay in processing and evaluating of the underinsurance claim is because Attorney Perry made certain representations but failed to follow through with them. Attorney Perry, according to MPC, has first-hand knowledge about the events and circumstances surrounding the delay in the investigation by MPC, and thus is a pertinent witness as to whether MPC and Marshall acted in the manner alleged in the Complaint.
Without elaborating on the events surrounding the underinsurance claim, Attorney Perry states in his affidavit that “I do not contemplate calling myself as a witness at the time of trial of the instant action. ” Attorney Perry further states: “I believe, as a member of the Massachusetts Bar, that my representation of the Plaintiffs, as their chosen counsel, comports with Supreme Judicial Court Rule 3:07.” From the affidavit it is clear that Attorney Perry’s best judgment is that his ongoing representation of the Hogans is not violative of S.J.C. Rule 3:07. This Court must accept Attorney Perry’s best judgment unless exceptional circumstances exist warranting the exercise of judicial discretion.
‘When a lawyer, exercising his best judgment, determines that his employment will not bring him into conflict with the code, disqualification may occur only if the trial court determines that his continued participation as counsel taints the legal system or the trial of the cause before it.” Borman, 378 Mass. at 788. If the testimony that counsel is to provide is contrary to his client’s interests, counsel must withdraw. See Serody, 19 Mass.App.Ct. at 413. The gravity of ethical dilemmas arise when it is the credibility of counsel as a witness which determines the outcome of the case. See id., quoting Black, 376 Mass. at 929. “The need for disqualification is greatest where the lawyer is most intimately involved in the events at issue.” Id. When counsel’s best judgment appears questionable, “(s]izing up the potential for prejudice in a particular case and the degree of that prejudice involves exercise of discretion by the trial judge." Serody, 19 Mass.App.Ct. at 415.
However, disqualification of counsel is not proper in every case where counsel's testimony is necessary. See Byrnes v. Jamitkowski, 29 Mass.App.Ct. 107, 109 (1990). “We must look to whether the attorney is likely to ‘withhold crucial testimony from his client because he prefers to continue as counsel,’ Borman, 378 Mass. at 790, to determine if the ‘continued participation as counsel taints the legal system or the trial of the cause before it.’ Id. at 788.” Byrnes, 29 Mass.App.Ct. at 109-10.
The standard as realized from the above case law requires this Court to examine Attorney Perry’s role in the surrounding events leading up to the present litigation. This Court does not easily brush aside Attorney Perry’s best judgment. Despite Attorney Perry’s best judgment, this Court finds that the legal system or trial in this matter may be tainted, and the outcome of trial depends on Attorney Perry’s credibility. “The ultimate concern about the testifying advocate is, in Professor Wigmore’s view, that the public might think that the lawyer is distorting the truth for his client.” Borman, 378 Mass. at 786, citing, 6 J. Wigmore, Evidence §1911 (Chadboum rev. 1976). An attorney as a witness may impact the client, also, because his interest in the case makes him susceptible to impeachment on the stand. Id., citing, A.B.A. Code of Professional Responsibility, EC 5-9 (1978) (footnote omitted).
MPC intends to call Attorney Perry as a witness to support its defense that any delay in the evaluation and investigation of the underinsurance claim is due to the actions of Attorney Perry. There does not appear to be any other means of presenting such evidence.[7] Thus, Attorney Perry is indeed a potential key witness at trial in this case, whose testimony will be both competent and relevant to MPC and Marshall.
Attorney Perry does not have Constitutional protections which will allow him to avoid testifying at trial.[8] If he is called to testify, Attorney Perry as a witness *178 will jeopardize the Hogans’ strategies and trial tactics. This is the result even if the Court assumes that Attorney Perry never made any representations that he would provide medical reports as alleged by Marshall and MPC. As the only individual communicating with MPC on behalf of the Hogans, Attorney Peny surely would need to testify to refute the allegations of MPC and Marshall. In addition, there is no other way to substantiate that Attorney Perry made numerous requests to MPC and Marshall that the claim be settled without Attorney Perry’s testimony. Thus, it is apparent that a trial in this case will turn on the testimony of Attorney Perry, and whether he made representations to MPC, and if so, whether they were performed.
The Court’s evaluation of the disqualification does not end with an analysis of Attorney Perry’s potential testimony. Against the above considerations in favor of disqualification, the Court must measure the impact on the client, which oftentimes is harsher. See Borman, 378 Mass. at 787. The Supreme Judicial Court has found that disqualification has the effect of depriving the client of his choice of counsel, and “temporarily (if not permanently) disabl[ing] the litigant in his effort to prosecute a claim or mount a defense.” Id. Indeed, where disqualification will place a substantial hardship upon the client, DR 5-101 (B)(4) suggests that the attorney be permitted to retain his status as counsel. See S.J.C. Rule 3:07, DR 5-101(B)(4).
The Hogans and Attorney Perry point to DR 5-101(B)(4) to support their argument that Attorney Perry should not be disqualified. They argue that disqualification of Attorney Perry will cause the Hogans to lose their chosen counsel in whom they have trust and confidence. In addition, the Hogans contend that the complex nature of this case, and its extensive history, make Attorney Perry the only qualified attorney to represent them. Lastly, the Hogans claim that they will experience “financial, emotional and strategic hardship” if Attorney Perry is disqualified.
While it is true that the Hogans will lose their first choice of counsel, the legal profession is not so barren of qualified attorneys that Attorney Perry cannot recommend with confidence another attorney who can perform competently and equally sufficient to Attorney Perry’s own abilities. In addition, if the Hogans have trust and confidence in Attorney Perry, they will accept with trust and confidence an attorney recommended to take his place.
Furthermore, this case is a claim for violations of G.L.c. 93A and c. 176D, and breach of contract. The issues presented are not so complicated and difficult for a competent successor counsel practicing in this field of law to understand and comprehend. It is not altogether certain that successor counsel "would have to grapple” to gain an understanding of the issues involved in this case. This Court finds that the effect of the disqualification of Attorney Perry will not be so deleterious to the Hogans so as to warrant implication of DR 5-101 (B)(4).
3. Disqualifying the Firm
DR 5-102 requires not only the attorney to withdraw, but also the law firm with which he is associated. See Borman, 378 Mass. 775, 785 (1979). “Although the impact on the client, trial and public lessens when the attorney-witness is not himself trial counsel but only a member of trial counsel’s firm, there is an impact nonetheless.” Id., at 787 (citations omitted).
In light of the necessity to remove Attorney Perry as counsel for the Hogans in the present case, and given the above case law, neither Attorney Perry nor any member of his firm may be permitted to represent the Hogans.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendant, Metropolitan Property and Casualty Insurance Company’s Motion for a Protective Order is ALLOWED.
Pursuant to this Memorandum of Decision, it is hereby ORDERBD as follows:
1. Hie subpoena served upon the Keeper of the Records for Metropolitan Property and Casualty Insurance Company, dated May 20, 1997, is quashed: and
2. The Keeper of the Records is protected from furnishing a response to the requested documents inasmuch as the requested documents duplicate the request served upon Metropolitan Property and Casualty Insurance.
It is further ORDERED that Metropolitan Property and Casually Insurance Company is protected from serving upon the Plaintiffs any discovery which is protected by the attorney-client privilege or work-product privilege, unless the Plaintiffs demonstrate a substantial need for such discovery pursuant to Mass.R.Civ.P. 26.
It is further ORDERED that Metropolitan Property and Casualty Insurance Company is protected from serving upon the Plaintiffs any discovery which is duplicative, irrelevant or unduly burdensome.
It is farther ORDERED that:
1. Terance Perry, Esq., and the firm of Brendan J. Perry & Associates, P.C. is disqualified from representing the Plaintiffs, Jerilyn Hogan and Kenneth Hogan; and
2. Metropolitan Property and Casualty Insurance Company is protected from serving a response to any discovery upon the Plaintiffs’ attorney, Terance Perry, Esq., or the firm of Brendan J. Perry & Associates, P.C.

 The Hogans filed a Motion to Strike, for Sanctions and for Contempt, which this Court addressed in a Memorandum of Decision dated October 31,1997. In addition, the Hogans filed a Motion to Quash, for a Protective Order and for Sanctions which this Court will address in a separate Memorandum of Decision.

 However, MPC is cautioned that while a party can avoid disclosing privileged information sought under Mass.R.Civ.P. 26(b)(1), that party may not later use the undisclosed documents at trial. G.S. Enterp., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 270-71 (1991).

 Attorney Perry’s affidavit is barren of factual allegations surrounding the initiation of this litigation. Attorney Perry states “[n]ext following the initiation of Plaintiffs’ representation regarding the accident I unsuccessfully attempted to resolve Plaintiffs’ claim to underinsured benefits and, thereafter, this litigation resulted.” This single statement regarding the unsuccessful attempt at resolving the underinsured claim does not provide much insight into the reasons, if any, why Attorney Perry should not be considered a pertinent witness in this case.

 The parties have been playing their own version of hardball since the inception of this case. Despite this, this Court will not consider the unprofessional antics of both counsel when examining the motion for a protective order and the motion to disqualify, as such behavior was sufficiently addressed in the Memorandum dated October 31, 1997.

 Cf. Rizzo v. Sears Roebuck and Co., 127 F.R.D. 423, 426 (D. Mass. 1989) (because opposing counsel had documents which supported the same contentions to which counsel would testify at trial, disqualification of counsel was not necessary, and a protective order preventing the deposition of counsel was allowed).

 Attorney Perry has brought a motion for a protective order to avoid being deposed and subject to further discovery in this matter. That motion is decided in light of the Court’s outcome in this motion, in a separate Memorandum of Decision.