THERESA KENDALL *vs.* LILYAN A. ATKINS, executrix.

Essex. December 8, 1977. — February 3, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Attorney at Law. Witness,* Attorney as witness. *Evidence,* Privileged communication. *Practice, Civil,* Judicial discretion.

Statement of proper subjects of inquiry, out of the presence of the jury, when counsel for a party calls counsel for the opposing party as a witness and the latter objects on the basis of the attorney-client privilege. [323-325]

There was no abuse of discretion at the trial of a civil action in the judge's failure to intervene on his own motion when the defendant's counsel, without prior notice, called the plaintiff's counsel as a witness, notwithstanding his objection on the basis of the attorney-client privilege, where plaintiff's counsel then took the position, for the benefit of the jury, "Let them know everything." [325-326]

CONTRACT. Writ in the Superior Court dated October 6, 1971.

The action was tried before *Hallisey, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Neal C. Tully* for the plaintiff.

*James T. Ronan* for the defendant.

BRAUCHER, J. Toward the end of a jury trial in an action for the fair value of services rendered, the defendant, without prior notice, called the plaintiff's counsel as a witness. Appealing from a judgment entered on a verdict for the defendant, the plaintiff contends that the conduct of defense counsel was so improper and prejudicial as to deprive her of a fair and impartial trial of her claim. We affirm the judgment, but we take the occasion to comment on the procedure to be followed in such a situation.

The plaintiff sued the executrix of the will of Frederick J. Dion for the fair value of services rendered to Dion. According to her bill of particulars, the services were rendered from January 3, 1960, to April 9, 1971, and consisted of "furnishing him with daughter-like devotion, companionship, affording him comfort and care during occasions when he was lonely or depressed or ill, permitting him to direct, in part, the course of her life, part-time housekeeping, part time cooking, part time shopping and part time chauffering [*sic*]." The defendant contested the existence of an agreement and the value of the services, contended that any agreement was illegal because sexual relations were central to the bargain, and claimed payment in full. After verdict and judgment for the defendant and denial of the plaintiff's motion for a new trial, the plaintiff appealed, and we allowed her application for direct appellate review.

Before trial the plaintiff's counsel took the deposition of the defendant executrix, Dion's daughter. He asked her a number of highly leading questions. For example, when the plaintiff moved to a new apartment, Dion went with her to pick out the furniture. In deposing the defendant the plaintiff's counsel asked, "Your father selected the bed, didn't he?" Numerous other questions were asked in like manner.

On the first day of trial the plaintiff testified on her own behalf. On cross-examination defense counsel inquired into her knowledge of the deposition of the defendant. He then used the questions put to the defendant at the deposition as the basis for questions to the plaintiff in the form, "he [the plaintiff's counsel] got that information from you, did he not?" On objection by the plaintiff, the judge excluded a number of such questions by reason of the attorney-client privilege. Defense counsel then asked the plaintiff questions in the form, "[your counsel] made this statement as a matter of fact . . . 'Your father selected the bed, didn't he,' and I want to ask you now, is it the truth that Mr. Dion selected the bed in your apartment?" The judge overruled objections to such questions, instructing the jury that "questions by lawyers are not evidence. Only what is said by witnesses. That includes what goes on in the courtroom here and what goes on in the deposition."

On the fourth day of trial, after the plaintiff had rested, defense counsel said he had no further testimony that day but was not ready to rest. The next morning, without prior notice, he called the plaintiff's counsel as a witness, and the judge overruled the plaintiff's objection. Defense counsel reminded the plaintiff's counsel that he had said, the day before, "Let them [the jury] hear everything," and asked, "That is let them hear everything but Lilyan Atkins' deposition, isn't it?" The plaintiff's counsel then said he had no objection to marking that deposition as an exhibit, and without objection the depositions of both plaintiff and defendant were admitted in evidence.

Defense counsel quoted from the defendant's deposition, and asked, "You had that there from the notes that you had

taken in your interview [with the plaintiff], is that not so?" The plaintiff's counsel objected on the ground of attorney-client privilege, and the judge sustained the objection. After some colloquy the judge said to the jury that the privilege was that of the client and that the plaintiff's counsel had no power to waive it. The plaintiff was recalled as a witness and asked whether she would waive the privilege. She did not understand, and the judge and both counsel took turns trying to explain. Finally, on advice of her counsel, she said she would answer questions as to what she told her lawyer, and the judge ruled that there was an intelligent, voluntary, knowing waiver. In response to defense questions the plaintiff testified, as to several of the facts assumed by her counsel in his deposition questions, that she had not discussed those facts with her counsel.

The plaintiff's counsel resumed the witness stand. With the defendant's consent, he made a statement instead of cross-examining himself. He testified to the content of his first interview with the plaintiff. According to his testimony, he told her what he had heard about Dion and his two sons, and he summarized on the witness stand many supposed facts to their discredit.

1. *Counsel as witness.* It is clear that counsel is competent to testify either for or against his client. G. L. c. 233, § 20. See 6 J. Wigmore, Evidence § 1911 (Chadbourn rev. 1976). Testimony on behalf of the client has been the subject of much discussion, principally directed to the question in what circumstances the lawyer-witness must refuse or withdraw from employment. See S.J.C. Rule 3:22, DR 5-101, DR 5-102, 359 Mass. 796, 814 (1972); Rule 12 of the Superior Court (1974); Enker, The Rationale of the Rule that Forbids a Lawyer to be Advocate and Witness in the Same Case, 1977 Am. Bar Foundation Research J. 455. In *Potter* v. *Ware,* 1 Cush. 519, 524 (1848), holding the plaintiff's counsel competent to testify for the plaintiff, the court said, "In most cases, counsel cannot testify for their clients without subjecting themselves to just reprehension. But there may be cases in which they can do it, not only without

dishonor, but in which it is their duty to do it. Such cases, however, are rare; and whenever they occur, they necessarily cause great pain to counsel of the right spirit." See *Holbrook* v. *Seagrave*, 228 Mass. 26, 29 (1917): "While such a practice by an attorney is not to be commended, it was within the discretion of the single justice to permit the witness to testify."

The propriety of calling opposing counsel as a witness seems to have been considered less often. In *Brown* v. *Jewett*, 120 Mass. 215, 218 (1876), the plaintiff called counsel for the defendants as a witness to prove the defendants' signatures and also to prove the witness's authority to bring a prior suit, and this court held the evidence "was rightly admitted." That holding is in harmony with numerous decisions elsewhere. *People* v. *Boford*, 117 Cal. App. 2d 576, 580 (1953) (prosecutor called by criminal defendant). *State* v. *Seymour*, 7 Idaho 548, 555 (1901) (same). *Robertson* v. *Commonwealth*, 269 Ky. 317, 324 (1937) (same). *Cox* v. *Williams*, 5 Mart. (n.s.) 139, 140-142 (La. 1826) (statute; plaintiff's attorney called by defendant). *State* v. *Lee*, 203 S.C. 536, 541 (1943) (prosecutor called by criminal defendant). In such cases the party who calls the witness has no right to require him to withdraw as counsel. *Chessman* v. *Teets*, 239 F.2d 205, 214 (9th Cir. 1956), rev'd on other grounds, 354 U.S. 156 (1957). *Galarowicz* v. *Ward*, 119 Utah 611, 619-620 (1951). Cf. S.J.C. Rule 3:22, DR 5-102 (B), 359 Mass. at 815.

"The practice of attempting to call opposing counsel as a witness during the course of trial to establish some fact that can be readily proved in a different manner should be discouraged." *Rude* v. *Algiers*, 11 Wis. 2d 471, 482 (1960). If a need for the testimony of opposing counsel can be foreseen, prior notice should be given to enable substitute counsel to be present while the attorney-witness is testifying. If no such notice is given, there may be ground for a continuance. In such matters, much must be left to the discretion of the judge. In the present case, for example, the attorney-witness objected, on the basis of the attorney-client privilege, to

being called as a witness. It would have been proper to inquire, out of the presence of the jury, what facts the defendant sought to establish, whether those facts could be proved in a different manner, and how the attorney-client privilege affected the problem. Such an inquiry might have been requested by the plaintiff, or it might have been made on the judge's own motion.

We do not think an abuse of discretion is shown by the fact that the judge did not intervene on his own motion. The plaintiff's counsel, when called, said, "On the basis of the sacred attorney-client privilege, your Honor, I do object. I understand your Honor overrules my objection, and I will take the stand." Thereafter he made no attempt to proceed along the lines suggested above, but took the position, for the benefit of the jury, "Let them know everything." Whatever the reasoning behind his strategy, we think he could not revise it by a motion for a new trial after an adverse verdict or by argument on appeal.

2. *The attorney-client privilege.* The defendant's theory was that the plaintiff had told her counsel facts to be used in questioning witnesses, and hence had "released him to publicize the question." On that theory, the attorney-client privilege was not applicable because her communication to her counsel was not confidential. Cf. *Commonwealth* v. *Michel,* 367 Mass. 454, 460-461 (1975); *Peters* v. *Wallach,* 366 Mass. 622, 627 (1975). The judge rejected that theory. The defendant might also have asserted that the plaintiff waived the privilege by testifying in her own behalf. See *Knowlton* v. *Fourth-Atlantic Nat'l Bank,* 264 Mass. 181, 196 (1928); *Woburn* v. *Henshaw,* 101 Mass. 193, 200 (1869). But see *Montgomery* v. *Pickering,* 116 Mass. 227, 231 (1874); W.B. Leach & P.J. Liacos, Massachusetts Evidence 163-164 (4th ed. 1967). He made no such assertion, and we assume, without deciding, that the plaintiff could properly claim the attorney-client privilege.

On that assumption, we think there was no error in calling on her to make the claim before the jury. Our decisions strongly support that procedure. *Phillips* v. *Chase,* 201

Mass. 444, 450 (1909), writ of error dismissed, 216 U.S. 616 (1910). *McCooe* v. *Dighton, Somerset, & Swansea St. Ry.*, 173 Mass. 117, 119 (1899). Cf. *Kaye* v. *Newhall*, 356 Mass. 300, 304-306 (1969) (privilege against self-incrimination). See Me. R. Evid. 513 (a) (1976). A contrary rule prevails in some other jurisdictions. See McCormick, Evidence § 76 (2d ed. 1972). But the point was not raised at trial, it is not clearly or effectively argued here, and we are not inclined to explore it on our own motion.

3. *Confusion.* We have considered the possibility that the conduct of counsel on both sides was such as to distract the jury from deciding the real issues on their merits and to sidetrack them into passing judgment on the character of the attorneys. See *Robinson* v. *Pennsylvania R.R.*, 214 F.2d 798, 800 (3d Cir. 1954). We think, however, that the case is not made out. In the first place, the plaintiff has not put the entire case before us, and we cannot make an intelligent judgment as to the impact of the forensic displays of counsel, both of whom are experienced trial lawyers. Secondly, although counsel engaged in several undignified colloquies in front of the jury, the judge each time promptly called a halt. Finally, in his charge the judge was explicit: "This is not, though you might have thought differently at times this morning, a personal appearance contest between the lawyers. You are not to decide this case on which lawyer you think would win the Nobel prize for acting." See *Fialkow* v. *DeVoe Motors, Inc.*, 359 Mass. 569, 571-572 (1971).

*Judgment affirmed.*