SMALAND BEACH ASSOCIATION, INC. *vs.* ARTHUR F. GENOVA
& another[1]; ALLAN BARTLETT & others,[2] third-party defendants.

Plymouth. October 4, 2011. - January 5, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Attorney at Law,* Disqualification, Attorney as witness. *Witness,* Attorney as
witness. *Practice, Civil,* Disqualification of judge, Deposition.

Discussion of the disqualification of counsel from representation of a client at
trial under Mass. R. Prof. C. 3.7 (a) [219-220], and the standard of review
of such a disqualification order [220-221].
In a civil action, a Superior Court judge abused his discretion by ordering the
disqualification of counsel from representing his clients at trial on the
ground that the attorney had rendered himself a necessary witness whom the
opposing parties would have the right to call to testify, arising from the
clients' assertion of an advice of counsel defense and the attorney's as-
sistance to certain deponents in submitting errata sheets that substantively
changed their testimony, where the judge did not conduct the searching
inquiry required to balance the respective prejudice to the parties and consider
whether the information sought from the attorney could be adduced through
other means. [221-225]
Statement that disqualification of an attorney from representation of a client
under Mass. R. Prof. C. 3.7 (a) is limited to barring an attorney's participa-
tion at trial. [225-227]
There was no merit to a request by parties in a civil action to disqualify a
Superior Court judge (who ordered the disqualification of their attorney
from representing them at trial) from further involvement in the case on
remand. [227]
Statement of principles governing the use of errata sheets to alter deposition
testimony under Mass. R. Civ. P. 30 (e). [227-230]

CIVIL ACTION commenced in the Superior Court Department on
January 20, 2005.

Motions for disqualification of counsel and for reconsidera-
tion were heard by *Richard J. Chin,* J., and a proceeding for
interlocutory review was heard in the Appeals Court by *Janis
M. Berry,* J.

---

[1]Patricia A. Genova.

[2]Louise Johnson, Mark Johnson, Russell Johnson, William Smith, and Carol
Mahoney.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Lee P. Alfieri* for Smaland Beach Association, Inc., & others.

*Robert Kraus* for the defendants.

CORDY, J. Smaland Beach Association, Inc. (Smaland), together with the third-party defendants Allan Bartlett, Louise Johnson, Mark Johnson, Russell Johnson, William Smith, and Carol Mahoney, all of whom are directors, officers, or members of Smaland, appeal from a Superior Court judge's order disqualifying their attorney, Lee Alfieri, from representing them in a real property dispute against Arthur and Patricia Genova (Genovas).[3] The judge disqualified Alfieri based on his conclusion that Alfieri was a necessary witness because his clients had raised an advice of counsel defense and he had assisted various witnesses in submitting errata sheets that substantively changed their deposition testimony. We conclude that the judge failed to engage a sufficiently searching review of this fact-intensive issue. Consequently, we vacate the order and remand the case for a further hearing. We also take this occasion to consider the scope of disqualification orders under Mass. R. Prof. C. 3.7 (a), 426 Mass. 1396 (1998), and to clarify the proper use of errata sheets in altering deposition testimony under Mass. R. Civ. P. 30 (e), 365 Mass. 780 (1974).

1. *Background.* The details of the underlying substantive dispute are not material here, although we summarize them briefly for context. In 1971, the owners of various lots in a subdivision around Island Pond in Plymouth formally incorporated Smaland to maintain a beach and related recreational facilities for its members. Smaland commenced this action in 2005 against the Genovas, two of its members whose property shares a common boundary with a beach lot owned by Smaland.[4] The complaint sought to ascertain the boundaries of the Genovas' front property line and asserted claims of encroachment onto the Smaland lot, trespass and unlawful cutting of trees, tortious inter-

---

[3]We refer to Smaland Beach Association, Inc. (Smaland), together with the third-party defendants, as the appellants.

[4]Arthur and Patricia Genova (Genovas) were members of Smaland from September 1, 1974, until April 23, 2005, when they were expelled as beach members.

ference with Smaland members' use of a boat ramp and boat dock, and prescriptive easement over the Genovas' property. The Genovas asserted counterclaims against Smaland to quiet title to the disputed areas, remove certain items from their property, and establish adverse possession of an area near and beneath their cottage. The Genovas also brought third-party claims against the officers and directors of Smaland alleging that the action brought against them constituted an abuse of process and that the conduct of the officers and directors violated fiduciary duties owed to the Genovas as Smaland members; and a third-party claim against a neighbor alleging that her retaining walls and stairs encroached onto the public road.

During the course of the lengthy litigation that ensued, the parties deposed a number of witnesses. Following their depositions, four third-party defendants and three other deponents submitted errata sheets that substantively changed their testimony. At various points in these errata sheets, the deponents wholly reversed their testimony from an affirmative to a negative response, or vice versa, struck existing testimony and replaced it with a different narrative, or added explanatory text to existing deposition testimony.[5] Although some changes carried in-depth

---

[5]Some examples of the errata sheet changes relevant to the parties' claims include: (1) One deponent adding to an answer, "I recall seeing them walking, standing, or working in the grassy area at some point in time, but it was on a irregular basis and I never observed an established or discernible pathway." (2) The same deponent later changed "I'd say no," to "I'd say yes," and "I don't believe . . . " to "I believe . . . ." (3) He also clarified existing testimony that Arthur Genova had cut down a tree to clear a neighbor's view of the beach, but changed the language, "I knew [the tree] was blocking," to "I knew [the Genovas] claimed it was blocking." (4) Another deponent struck seven lines of testimony explaining that she had answered questions from Alfieri about her history in the area and then signed an affidavit at his office and replaced it with four paragraphs of testimony emphasizing her role in making changes to and altering drafts of the affidavit before signing it. (5) That deponent also changed her testimony on five occasions to explain that, although she did not witness the construction itself, "it appeared to [her] that when the [Genovas'] railroad road tie retaining wall was replaced with the pressure-treated retaining wall, backfilling was done behind the front section of the new wall" and that, as a result, she believed that "the front yard was extended." (6) A third deponent added nine passages to clarify testimony revolving around markings she had made on a map of the Genovas' property and surrounding area during her deposition, repeatedly emphasizing that "[the Genovas' wall] extended into Crescent Road." (7) A fourth deponent added testimony "but the

explanations, the typical reason given was to "clarify testimony." During the second day of their depositions, two of these deponents — both Smaland officers and third-party defendants — testified that their attorney, Alfieri, had assisted them in drafting the errata sheets.

In May, 2006, the parties filed their first joint pretrial memorandum, in which the Genovas listed Alfieri as a potential witness. At a hearing to discuss the bifurcation of the trial into nonjury and jury issues, a Superior Court judge (not the judge who entered the disqualification order) inquired into the need to call Alfieri. Alfieri represented that he did not believe he would be called as a witness at the trial and the Genovas' counsel did not disagree. The judge subsequently issued an order bifurcating the trial[6] and, in June, 2007, presided over the jury-waived trial, at which Alfieri was not called as a witness. The judge issued a decision in April, 2009.[7]

In advance of the jury trial on the remaining issues, the parties submitted a second joint pretrial memorandum, in which the Genovas again listed Alfieri as a potential witness. Smaland and the third-party defendants, like their adversaries, also filed

---

pathway is very recent." (8) That same deponent also changed her answer "Yes," to "Yes, I heard that Arthur claimed he cut down the tree because it blocked [a neighbor's] view."

[6]In the bifurcation order, the judge concluded that the jury-waived trial would resolve the Genovas' counterclaim to quiet title and would determine whether the Genovas owned "the fee in a specific section of land which is located forward of their lot line and extends across a private way shown as Crescent Road," which would require analysis of the derelict fee statute and the scope of any property rights the original common grantor had retained "in the land on the side of Crescent Road which is opposite that of the land of the parties." It would also reach whether the Genovas had any rights, by implication, in that area and whether Island Pond, the body of water on the opposite side of the road from the parties' lots of land, is a Great Pond.

The judge then identified as issues for a later jury trial what, if any, rights were obtained through adverse possession or prescription, the obstruction of paths, the encroachment of buildings, trespass, vandalism, and the cutting of trees, as well as the abuse of process counterclaim and the third-party claims for abuse of process, breach of fiduciary duty, and encroachment.

[7]The judge concluded that Island Pond is privately owned and that, although the Genovas "have fee interest across the total way of Crescent Road and to the mid-point of Island Pond," that fee is subject to an easement, which permits "all lot owners . . . to access the waters of Island Pond, including the beach and water in front of [the Genovas' lots] for purposes of recreation."

various pretrial motions, including a motion to prohibit the Genovas from calling Alfieri as a witness. The day before the hearing scheduled to consider these motions, the Genovas filed their opposition to this motion, expressing a conditional need to call Alfieri as a witness. The judge, however, treated the Genovas' opposition as a motion to disqualify Alfieri, and focused the hearing on that issue.

At the start of the hearing, the judge instructed the parties that, on his reading of the bifurcation order, only three claims would proceed to trial[8]: (1) Smaland's trespass claim, alleging that Arthur Genova entered its property and wrongfully cut down a tree; (2) the Genovas' trespass and vandalism counterclaim, alleging that Smaland entered their property and removed granite survey markers and large rocks; and (3) the Genovas' adverse possession counterclaim alleging that they had acquired title to a portion of their cottage, related retaining walls, garden, and bordering pathway that may technically lie on Smaland's lot. Later in the hearing, he acknowledged that the Genovas' breach of fiduciary duty claim against the third-party defendants was also appropriate for the jury trial.

After defining the scope of the impending jury trial, the judge identified two ways in which Alfieri had rendered himself a necessary witness and heard from both parties on the disqualification issue. First, the judge accepted that the third-party defendants had raised an advice of counsel defense to the Genovas' breach of fiduciary duty claim.[9] To the judge, if the third-party defendants invoked this defense at trial, the Genovas had a

[8]The judge narrowed the scope of the jury issues to those claims seeking a remedy other than, or in addition to, injunctive relief. He explained that this "ruling is based on the bifurcation order that indicates the counts for injunctive relief will be tried jury waived by somebody else." This statement alludes to a portion of the order that reads, "Although permanent injunctive relief is a matter for the court, not the jury, it cannot be decided until all the issues, non-jury and jury, have been resolved." As a result, the judge presiding over the first jury-waived trial refrained from considering permanent injunctive relief in that proceeding.

[9]The judge recognized at the hearing that the advice of counsel defense also went to the abuse of process counterclaim filed against Smaland and the third-party defendants. But, he reserved that issue for a later jury-waived trial because it solely sought injunctive relief (as compared to the breach of fiduciary duty claim, which he permitted to proceed because it sought injunctive relief and monetary damages).

"right" to call Alfieri. Second, the judge held that, given the highly unusual nature of the errata sheets that "totally change the deposition testimony," both the Genovas and the appellants could use Alfieri's testimony at trial. He went on to conclude that, while the Genovas would not be permitted to question Alfieri about what he had done for his clients, they would be allowed to inquire about the creation of the errata sheets submitted for nonclient witnesses, two of whom Alfieri admitted would be called as witnesses at trial. On learning from Alfieri that at least one of these nonclient witnesses suffered from memory loss, the judge further suggested that it would be reasonable for Smaland and the third-party defendants to call Alfieri to rehabilitate that witness and, perhaps, other witnesses who might be impeached through their errata sheet changes. The judge, therefore, issued an order from the bench disqualifying Alfieri from representing Smaland and the third-party defendants, though he recognized that they would suffer some hardship as a result.

Through Alfieri, the appellants moved for reconsideration. The judge ordered that the motion be "reserved pursuant to [Superior Court] Rule 9A upon [Smaland] as they are technically without counsel." The appellants then petitioned a single justice of the Appeals Court for relief pursuant to G. L. c. 231, § 118, first par. Discerning "no abuse of discretion or clear error of law," the single justice denied relief. Through new counsel, the appellants again moved the judge to take action on the motion for reconsideration. The judge determined "[n]o action necessary" because the Appeals Court had affirmed his prior ruling. The appellants then brought this interlocutory appeal. We transferred the appeal here on our own motion.[10]

2. *Discussion.* a. *Attorney disqualification.*[11] Rule 3.7 (a) of the Massachusetts Rules of Professional Conduct provides, in pertinent part, that a "lawyer shall not act as advocate at a trial

---

[10]Under the doctrine of present execution, an interlocutory appeal from a disqualification order may be taken immediately. See, e.g., *Borman* v. *Borman*, 378 Mass. 775, 780-781 (1979). Neither party disputes that this appeal is properly before us.

[11]The Genovas have incorporated throughout their appellate brief a conflict of interest argument regarding Alfieri's representation of the appellants. Because this argument was not developed or presented to the judge below, we decline to consider it.

in which the lawyer is likely to be a necessary witness except where . . . disqualification of the lawyer would work substantial hardship on the client."[12] The primary purpose of the rule is "to prevent the jury as fact finder from becoming confused by the combination of the roles of attorney and witness." *Steinert* v. *Steinert*, 73 Mass. App. Ct. 287, 291 (2008) (*Steinert*). See also comment [2] to rule 3.7 ("A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. . . . It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof"). It mitigates the potential negative perception by the public that the attorney colored his or her testimony to further the client's case and relieves the opposing counsel of the difficult task of cross-examining his lawyer-adversary. *Culebras Enters. Corp.* v. *Rivera-Rios*, 846 F.2d 94, 99-100 (1st Cir. 1988). See *Borman* v. *Borman*, 378 Mass. 775, 786 (1979) (*Borman*); *Serody* v. *Serody*, 19 Mass. App. Ct. 411, 414 (1985) (*Serody*).

Despite these obvious benefits of the rule, it nonetheless carries with it the severe consequence of stripping a party of chosen counsel. Because of this, judges must proceed with "deliberate caution" when considering the disqualification of an attorney. *Rizzo* v. *Sears, Roebuck & Co.*, 127 F.R.D. 423, 424 (D. Mass. 1989), citing *Borman*, *supra*, and *Serody*, *supra*. They must reconcile "the right of a person to counsel of his choice on the one hand, and the obligation of 'maintaining the highest standards of professional conduct and the scrupulous administration of justice,' on the other." *Slade* v. *Ormsby*, 69 Mass. App. Ct. 542, 545 (2007) (*Slade*), quoting *Mailer* v. *Mailer*, 390 Mass. 371, 373 (1983).

As this analysis hinges in large measure on a judge's balancing of the respective prejudices to the parties, we review disqualification orders for an abuse of discretion. *Kendall* v. *Atkins*, 374 Mass. 320, 324 (1978) (*Kendall*). See *Steinert*, *supra* at 288. Yet, we must be mindful that "[d]isqualification is

---

[12]The full text of the rule provides for two additional exceptions where the testimony relates to an uncontested issue or to the nature and value of legal services rendered in the case. Mass. R. Prof. C. 3.7 (a) (1), (2), 426 Mass. 1396 (1998). The facts before us do not implicate these two exceptions.

not required in every case in which counsel could give testimony on behalf of his client on other than formal or uncontested matters," *Byrnes* v. *Jamitkowski*, 29 Mass. App. Ct. 107, 109 (1990), citing *Borman, supra,* nor is it automatically granted where a party attempts to call opposing counsel, *Borman, supra* at 792. Rather, our framework requires a more searching review to determine whether the lawyer's "continued participation as counsel taints the legal system or the trial of the case before it." *Id.* at 788.

To that end, judges must carefully examine the evidence before them and should consider whether the information sought from the attorney-witness can be presented in a different manner, whether the attorney-witness's testimony would be cumulative or marginally relevant, or whether disqualification was a foreseeable outcome. See *Kendall, supra* at 325; *Serody, supra* at 414; comment [4] to rule 3.7 ("It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness"). Where the need for an attorney to testify on behalf of his client arises, judges should defer to "the best judgment of counsel and his client," unless the attorney is "withhold[ing] crucial testimony from his client because he prefers to continue as counsel." *Borman, supra* at 790. But where opposing counsel seeks to question the attorney, "[t]he matter lies differently . . . ." *Serody, supra* at 413. In such cases, judges must guard against the "the Canons of Ethics [being] brandished for tactical advantage," and must prevent litigants from wielding the rule as a weapon to "maneuver [opposing counsel's] withdrawal and to that degree unsettle the adversary."[13] *Id.* at 414. Although such scrutiny typically discourages the practice of allowing a party to call opposing counsel as a witness, where the testimony sought is prejudicial to or directed against the client, "the case for judicial intervention is more powerful." *Id.* at 413. See *Kendall, supra* at 324.

Because the judge grounded his decision in two independent

[13]The likelihood of such underhandedness is minimal in this case. The Genovas did not request Alfieri's disqualification; they merely expressed a conditional need to call the lawyer as a witness if the appellants invoked the advice of counsel defense or if they called witnesses whose testimony implicated the changes in the errata sheets. It was the judge who identified Alfieri's role as warranting disqualification and initiated the hearing.

courses of conduct, we explore each path to disqualification in turn. First, we recognize that an attorney may be deemed a necessary witness when his clients assert an advice of counsel defense. See, e.g., Sea Trade Maritime Corp. *vs.* Coutsodontis, No. 09 Civ. 488 (BSJ) (HBP) (S.D.N.Y. July 25, 2011) (permitting attorney disqualification where advice of counsel defense raised). The content of that defense requires, among other things, a showing that the clients made a full and honest disclosure of material facts to the attorney and that they followed the attorney's advice. *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 275 (1991). Surely, it might be reasonable to call the attorney who rendered the advice. But just because inclusion of such testimony would be reasonable in some instances does not mean it is required in all.

When faced with disqualification stemming from this defense, a judge must still undertake the analysis discussed above, and consider whether the information sought from an attorney could be adduced through other means. See *Kendall, supra* at 324-325; *Serody, supra* at 414. Here, there is no indication that the judge conducted that inquiry, and the record before us does not enable us to do so. The Genovas have not articulated the expected content of Alfieri's testimony, nor have they explained what it may offer beyond the testimony of the parties themselves.[14] The record is equally devoid of any reason why Alfieri must testify to defend his clients. Such strategic decisions rest with the attorney and his client, unless a judge concludes that the attorney's failure to testify is "obviously contrary to the client's interests." *Borman, supra* at 791. Absent these additional findings, Alfieri's disqualification on the ground that his clients have asserted an advice of counsel defense rests on speculation, which is "plainly insufficient to serve as a basis for disqualification."[15] *Steinert, supra* at 290.

---

[14]In their initial opposition, which the judge treated as a motion to disqualify Alfieri, the Genovas conceded the possibility that they could explore the advice of counsel defense without calling Alfieri.

[15]The assertion of an advice of counsel defense may also lead to a conflict of interest between Alfieri and his clients. Although we refrain from exploring that issue here, we note that Alfieri represents three parties in this case: Smaland as a corporate entity, its officers and directors as third-party defendants, and one of its members as a third-party defendant.

The second path to Alfieri's disqualification originates in his role in drafting the errata sheets that substantively change the deposition testimony of his client and nonclient witnesses. Throughout the hearing, the judge emphasized the unusual nature of these documents. We do not disagree. Our review of the errata sheets reveals that meaningful changes were made to the underlying testimony, and their consistent use across witnesses calls into question Alfieri's role in their creation. Yet, given the prospective uses of Alfieri's testimony, these facts alone do not provide adequate justification for concluding that the attorney is a necessary witness.

First, in accepting the Genovas' argument that Alfieri was needed to explain the creation of the errata sheets, the judge failed to explore whether the testimony sought would be prejudicial to or directed against Alfieri's clients, or whether alternate sources for this information were available. Such analysis is crucial in justifying judicial intervention into the attorney-client relationship where a party seeks the testimony of opposing counsel. See *Kendall, supra* at 325; *Serody, supra* at 414.

Here, however, the judge did not engage this inquiry, and the record that was before him does not allow us to do so.[16] In the first instance, there is again no evidence of the likely content of Alfieri's testimony, which inhibits our investigation of the potential

---

[16]The Genovas' argument — and the record before the judge — also fails to explain adequately why Alfieri's prospective testimony about the creation of the errata sheets would be necessary to the limited issues reserved for the jury trial. In a two-page errata sheet, one of the nonclient witnesses added a few lines about the location of a gate and fence, changed an equivocal answer to a firmer assertion that he had seen an individual use a particular ramp, and replaced a "yes" with a "no." In an eight-page errata sheet, another provided a more detailed explanation of how she created an affidavit, added testimony regarding the Genovas' replacing their retaining wall (and thus potentially extending their front yard) and changed a negative response to an affirmation that she had seen her brother's affidavit (see note 5, *supra*).

Although this testimony would feasibly be relevant to the Genovas' adverse possession counterclaim, which was among the four issues to be heard at the jury trial, it is unclear why its inclusion would render Alfieri a necessary witness. With regard to these particular witnesses, these changes suggest little more than a lapse in memory and, as discussed more fully *infra*, both the underlying deposition testimony and the errata sheet changes would be available to impeach them. The Genovas, then, are free to discredit these and any other witnesses with the discrepancies they identify between the two sets of documents, even without any testimony from Alfieri.

harm it could cause his clients without steering us toward impermissible speculation. In the second, the judge's dialogue at the hearing disregarded the likelihood that most witnesses would be capable of recalling how their errata sheets were created and the possibility that any explanation of the process may have been preserved in deposition testimony. For example, on the second day of her deposition, the witness identified as suffering from memory loss explained that she marked changes on a deposition transcript that Alfieri had provided to her and delivered those changes to him. According to the witness, Alfieri then "wrote it up in better language than what . . . I had. But I made the corrections first and brought them down to . . . Alfieri." Perhaps this passage would serve as an adequate explanation of the errata sheets for the parties to present to the jury. We do not know. The bulk of the underlying deposition transcripts was not before the judge at the disqualification hearing.

Similar flaws are apparent in the judge's conclusion that Alfieri may have to testify to rehabilitate any witnesses impeached through their errata sheets changes, and, thus, "properly defend his client." Through the use of the errata sheets at trial, the jury would be in a position to consider the memories of the witnesses and their ability to remember a given fact at a certain time. On the record before us, it appears that Alfieri is in no better position to speak to these issues than the witnesses themselves, nor is he better poised than the jury to judge the apparent discrepancies. In any event, the decision to call Alfieri to rehabilitate a witness, and thus testify on behalf of his clients, initially lies with him, as the attorney, and his clients. *Borman,* *supra* at 787-788. They could reasonably decide that the witnesses could overcome any impeachment without Alfieri's testimony. Without additional findings, any decision to forgo Alfieri's testimony does not appear to contradict the clients' interests so dramatically as to warrant judicial intervention. See *id.* at 790-791.

The decision to disqualify an attorney is a difficult one with substantial consequences to the attorney's client, particularly, as here, where the case has been litigated by the attorney over many years. As such, judges considering these motions must closely scrutinize the facts before them to determine whether a

lawyer's "continued participation as counsel taints the legal system." *Id.* at 788. Given the accusations of attorney misconduct in the preparation of the errata sheets, it may be that, after further review, the judge will again disqualify Alfieri. Even with that possibility, the present order cannot stand on the record before us. Although the decision came on the eve of trial, the judge did not sufficiently analyze the factors before him, particularly in light of the narrow issues for the jury trial he proscribed. Therefore, we vacate the disqualification order and remand the case for a further hearing consistent with this opinion.[17]

b. *Pretrial disqualification.* Although we have vacated the judge's order, the total disqualification he imposed on Alfieri compels us to offer some guidance on the subsequent review of this issue.

By its plain language, rule 3.7 (a) prohibits a lawyer from acting "as an *advocate at trial* in which the lawyer is likely to be a necessary witness" (emphasis added). Unlike the rules governing disqualification due to conflicts of interest with the lawyer-witness's current client or prior representation of the opposing party, this rule contains the limiting phrase "at trial." Contrast Mass. R. Prof. C. 1.7, 426 Mass. 1330 (1998) (conflict of interest); Mass. R. Prof. C. 1.9, 426 Mass. 1342 (1998) (prior representation). It also focuses on a lawyer's specific role as an advocate at that trial, thus differentiating this rule from its predecessor, which broadly prohibited a lawyer who ought to serve as a witness from participating in "the *conduct* of the trial" (emphasis added). Disciplinary Rule 5-102 (A), 359 Mass. 814 (1972). While the former rule could — and had been — read to encompass a lawyer-witness's pretrial representation of his client, we are persuaded that the current rule does not. See *Culebras Enters. Corp.* v. *Rivera-Rios*, 846 F.2d 94, 99 (1st Cir. 1998) (*Culebras*) (Rule 3.7 of Model Rules of Professional Conduct of American Bar Association [ABA], which is identical to Massachusetts rule, should not be read "as broadly prohibiting the rendition of case-related out-of-court services prior to trial"); *Steinert, supra* at 290-291 (rule 3.7 "does not limit

---

[17]Because we are vacating the disqualification order on other grounds, we need not reach the appellants' due process arguments.

the attorney's involvement prior to trial"). Compare Massachusetts Bar Association Committee on Professional Ethics Opinion No. 88-6 (1988) (concluding that Disciplinary Rule 5-102 [A] prohibited lawyer-witness from participating in pretrial activities, while recognizing that model rule 3.7, which is identical to current Massachusetts rule, was "a much less restrictive disqualification provision") with ABA Standing Committee on Ethics and Professional Responsibility Informal Opinion 89-1529 (1989) (concluding that model rule 3.7 permits lawyer-witness representation in pretrial activities provided client consents after consultation). As such, an attorney considered to be a necessary witness may participate in pretrial proceedings, though it would be particularly prudent first to secure client consent after consultation.[18] See id.

This reading of rule 3.7 (a) adheres to its text and fulfils its underlying purposes. See *Culebras*, *supra* at 99-100. That is, because the rule strives to mitigate potential jury confusion, to avoid the difficulties of cross-examining an adversary and to diminish the appearance of impropriety where an attorney "leave[s] counsel table for the witness chair," *Serody*, *supra* at 414, judges need only divorce the two functions — that of advocate and witness — at the trial itself. *Id.* at 414-415. These concerns, however, "are absent or, at least, greatly reduced, when the lawyer-witness does not act as trial counsel, even if he performs behind-the-scenes work for the client in the same case." *Culebras*, *supra* at 100.

Thus, were the judge to ground any future disqualification of Alfieri in rule 3.7 (a) alone, he is limited to barring the attorney's participation at trial.[19] Any disqualification that might

---

[18]As the ABA has cautioned, "some limitations on pre-trial representation [where an attorney is designated a necessary witness] should be observed." ABA Standing Committee on Ethics and Professional Responsibility Informal Opinion 89-1529 (1989). For instance, although the precise language of the rule does not call for disqualification in such settings, the ABA has suggested that a lawyer-witness should not represent his client at the lawyer-witness's own pretrial deposition, nor should the lawyer-witness argue a pretrial motion where his testimony is material to the substance of that motion. *Id.*

[19]"Nothing herein is meant to suggest that [Mass. R. Prof. C. 3.7 (a)] condones a witness-lawyer's visible association in the courtroom in the role of co-counsel with his client's trial attorney." *Culebras Enters. Corp.* v. *Rivera-Rios*, 846 F.2d 94, 100 n.8 (1st Cir. 1988).

extend to pretrial activities must derive from a different source.[20]

c. *Judicial disqualification.*[21] Smaland and the third-party defendants ask that we disqualify the motion judge from further involvement in the case on remand. We find nothing in the record to suggest that the judge's "impartiality might reasonably be questioned," and therefore decline to disqualify him. S.J.C. Rule 3:09, Canon 3 (E) (1), as appearing in 440 Mass. 1319 (2003). Despite the appellants' arguments to the contrary, the judge acted within his authority when he raised the issue of Alfieri's disqualification after the opposing party signaled its conditional intention to call Alfieri as a witness. See *Kendall, supra* at 325. That the resulting order was adverse to the appellants does not demonstrate the required "bias or prejudice" to warrant judicial disqualification. *Commonwealth* v. *Greineder,* 458 Mass. 207, 235 (2010), quoting *Commonwealth* v. *Adkinson,* 442 Mass. 410, 415 (2004).

d. *Errata sheets.* Errata sheets have played a central role in the litigation among the parties, and Smaland and the third-party defendants have argued that any substantive changes contained within the errata sheets were proper under Mass. R. Civ. P. 30 (e). Although the validity of the errata sheets is not directly before us, we nonetheless take this opportunity to clarify the use of errata sheets to alter deposition testimony.

Rule 30 (e) allows that "[a]ny changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of reasons given by

---

[20]We recognize that combining the roles of advocate and witness may create a conflict of interest, and note that such situations are governed by Mass. R. Prof. C. 1.7, 426 Mass. 1373 (1998) (conflict of interest), or Mass. R. Prof. C. 1.9, 426 Mass. 1342 (1998) (prior representation), not rule 3.7. See comment [1] and [5] to rule 3.7. As such, total disqualification would be available under those theories.

Similarly, once it is established that Alfieri "intends to be a witness for his client," Rule 12 of the Rules of the Superior Court 960 (LexisNexis 2011-2012) would prohibit his participation "in the conduct of a trial . . . except by special leave of the court."

[21]Although we proceed to decide this issue, the Genovas correctly argue that, because the appellants did not raise this issue before the judge, they are technically barred from presenting it here. See *Commonwealth* v. *Greineder,* 458 Mass. 207, 235 (2010), citing *Commonwealth* v. *Coyne,* 372 Mass. 599, 602 (1977) ("Recusal is a matter that rests in the first instance in the discretion of the judge"); *Guardianship of Hocker,* 439 Mass. 709, 719 (2003).

the witness for making them." No Massachusetts appellate court has squarely decided the propriety under this rule of submitting substantive changes to deposition testimony through errata sheets.[22] Because the Massachusetts and Federal rules are similar, it is instructive to turn to our Federal counterparts for guidance.[23] See *Strom* v. *American Honda Motor Co.*, 423 Mass. 330, 335 (1996), quoting *Solimene* v. *B. Grauel & Co.*, 399 Mass. 790, 800 (1987), and *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 180 (1975) (" 'Because the Massachusetts Rules of Civil Procedure are patterned after the Federal rules, we interpret our rules consistently with the construction given their Federal counterparts,' . . . 'absent compelling reasons to the contrary or significant differences in content' ").

As courts and commentators have noted, divergent trends have emerged across the national landscape as Federal courts have grappled with this issue. See, e.g., *Reilly* v. *TXU Corp.*, 230 F.R.D. 486, 487 (N.D. Tex. 2005) (*Reilly*); *Summerhouse* v. *HCA Health Servs. of Kan.*, 216 F.R.D. 502, 504-505 (D. Kan. 2003); Macchiaroli, Rewriting the Record: A Federal Court Split on the Scope of Permissible Changes to a Deposition Transcript, 3 Fed. Cts. L. Rev. 1, 4-10 (2009). The traditional approach, adopted in the majority of Federal courts, allows any changes, whether in form or substance, clarifying or contradictory. *Reilly, supra* at 489-490. See, e.g., *Podell* v. *Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997); *Tingley Sys., Inc.* v. *CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 120 (D. Mass. 2001) (*Tingley*); *Lugtig* v. *Thomas*, 89 F.R.D. 639 (N.D. Ill. 1981)

---

[22]Two Superior Court judges have addressed this issue, concluding that, although Mass. R. Civ. P. Rule 30 (e), 365 Mass. 780 (1974), permits substantive changes through errata sheets, the original answers may remain on the record and available for impeachment purposes, McHugh *vs.* Kilp, Superior Ct., No. MICV1999-00875 (Mar. 22, 2001), and that, if the changes relate to matters of substance and, "in the judgment of the opposing party . . . have a substantially detrimental effect on the discovery in the case," the opposing party may be entitled to reopen the deposition, Chaplin *vs.* Quinn, Superior Ct., No. WOCV2002-1492B (Jan. 13, 2004).

[23]Rule 30 (e) of the Federal Rules of Civil Procedure provides: "On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them."

(*Lugtig*). To mitigate the potential for abuse under this liberal view, courts implementing this approach have allowed the original and changed answers, as well as any reasons given for the changes, to remain part of the record, *Lugtig, supra* at 641-642, and "reserved the right to reopen the deposition if the changes were material," *Summerhouse* v. *HCA Health Servs. of Kan., supra* at 505, citing *Tingley, supra* at 120-121.

A growing minority of courts has, however, adopted a narrower interpretation of Fed. R. Civ. P. 30 (e), either restricting the rule to typographical or transcription corrections, see, e.g., *Greenway* v. *International Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992), or permitting clarifying, but not contradictory changes, see, e.g., *Hambleton Bros. Lumber Co.* v. *Balkin Enters. Inc.*, 397 F.3d 1217, 1225-1226 (9th Cir. 2005).[24]

Given the plain language of our rule 30 (e), which encompasses "[a]ny changes in form or substance" to deposition testimony, we adopt the majority approach. Unlike the minority view, which imposes an artificial stricture on the analogous Federal rule, this scheme allows legitimate corrective changes and advances the underlying purpose of the discovery process, i.e., "for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Strom* v. *American Honda Motor Co., supra* at 336, quoting *Hickman* v. *Taylor*, 329 U.S. 495, 501 (1947). See *Reilly, supra* at 490.

Yet, we do not import this expansive reading without limitations necessary to guard against manipulation of rule 30 (e). First, counsel must understand and should explain to deponents that any changes they make must represent their own good faith

---

[24]Some courts have analyzed this issue under the " 'sham' affidavit rule," which generally states that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Hambleton Bros. Lumber Co.* v. *Balkin Enters. Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005). See *Burns* v. *Board of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003); *Thorn* v. *Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). This mode of analysis goes to the use of contradictory submissions in the context of a summary judgment motion, see *Lyons* v. *Nutt*, 436 Mass. 244, 249 (2002) (conflict between postdeposition affidavit and deposition testimony may not be used to create disputed issue of fact to defeat summary judgment motion), rather than the validity of those submissions under the rules of civil procedure. Because a summary judgment motion is not before us, the relevance of these cases to our decision is limited to any general pronouncements they make on the scope of permissible changes under rule 30 (e).

belief, and may not be undertaken simply to bolster the merits of a case. Second, counsel must ensure that any submitted changes comply with the procedural requirements of rule 30 (e). See *Lugtig, supra* at 641-642. We emphasize, in particular, the instruction that a statement of reasons must accompany the change. Mass. R. Civ. P. 30 (e). These reasons must be advanced in good faith and provide an adequate basis from which to assess their legitimacy; that is, they must not be conclusory. *Tingley, supra* at 119-120.

Like other courts employing a similar interpretation of rule 30 (e), we also adopt certain remedial measures. See *Lugtig, supra* at 642. First, because the text of rule 30 (e) does not require that the original answers of the deponent be struck, the original answers remain part of the record and may be read, along with the changed answers and reasons provided for the change, at trial. See *id.* at 641. Second, in the interest of fairness, where the deponent has made substantive changes as to significant matters on an errata sheet that, if provided during the deposition, would reasonably have triggered further inquiry, the party who took the deposition can reopen the examination for the purposes of exploring matters raised by the substantive changes in testimony and the origins of those changes.[25] Finally, if there is any indication that an attorney has exploited the rule by arranging or facilitating the submission of errata sheets for the purpose of strategic gain in a case and not to correct testimony, his conduct may be grounds for sanctions. See, e.g., Mass. R. Prof. C. 3.3, 426 Mass. 1383 (1998) (candor toward tribunal); Mass. R. Prof. C. 3.4 (a)-(d), (f), (g), 426 Mass. 1389 (1998) (fairness to opposing party and counsel).

While substantive changes to errata sheets are permitted under rule 30 (e), we caution deponents and attorneys to invoke this privilege sparingly. The errata sheet is intended as a tool to correct mistakes in deposition testimony or subsequent transcription. It is not to be used as a mechanism to inject additional facts into the testimony of a single deponent, or to align testimony across deponents.

---

[25]A judge may assess to the party whose substantive changes necessitated the reopened deposition the costs and attorney's fees associated therewith, where fairness requires.

3. *Conclusion.* The judge's disqualification order is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*