Hely, Charles J., J.
A. Introduction
The defendant in this case, Attorney Robert S. Troy, has moved to disqualify two attorneys from representing the plaintiff, the Town of Duxbuiy. The attorneys that Mr. Troy seeks to have removed from representing the town are Attorney Leonard H. Resten and Attorney Arthur P. Rreiger. Mr. Troy’s motion to disqualify Mr. Resten and Mr. Rreiger is denied.
The court conducted an evidentiary hearing on the motion on February 8, 2013. The fact findings are based on the evidence, the court’s assessment of the credibility of the evidence and the reasonable inferences that the court has drawn from the evidence.
B. Facts
(1) The Johnson Golf Case and the Relevant Meetings and Discussions Between Attorney Troy and Attorney Resten
The Town of Duxbuiy filed the present action against Attorney Robert S. Troy in 2012. The Town’s amended complaint alleges that Mr. Troy committed attorney malpractice and made misrepresentations while serving as Town Counsel for Duxbuiy. The town’s allegations concern Mr. Troy’s conduct as Duxbuiy town counsel in a contract award process for the management of a public golf course and in a related Superior Court action against the town. In that related case, Johnson Golf Management, Inc. v. Duxbury et al., Johnson Golf is suing the town regarding the contract award process. Johnson Golf has alleged that the town unlawfully failed to award them the contract and that town officials engaged in a civil conspiracy to violate the public contract procurement laws. The Johnson Golf case began in 2008. The town’s action against Mr. Troy was filed on July 18, 2012.
Mr. Troy’s motion seeks an order disqualifying Attorneys Leonard H. Resten and Arthur P. Rreiger from representing the town in the present case. Mr. Troy contends that Mr. Resten and Mr. Rreiger had formed an attorney-client relationship with him regarding Mr. Troy’s deposition that was to be taken by the plaintiff in the Johnson Golf case. Mr. Troy also contends that he disclosed confidential attorney-client information to Mr. Resten and Mr. Rreiger.
In early 2011, Mr. Resten began representing the town in the Johnson Golf case. Mr. Resten was retained for the town by a liability insurer. Mr. Troy had been representing the town as town counsel. He remained as co-counsel for the town along with Mr. Resten.
In early March 2012, Mr. Troy accused Mr. Resten of not telling him the truth about a settlement demand from Johnson Golf. Mr. Resten took offense at this accusation. Mr. Resten told Mr. Troy in a March 9, 2012, email that he had not lied to him. In this email, Mr. Resten told Mr. Troy: “I am zealously representing the town of Duxbury and I would never do anything adverse to its interests.” [Ex. 9; italics added.]
By March 2012, Mr. Resten believed that Mr. Troy had made materially false statements regarding the Johnson Golf case and the contract award process.
On March 13, 2012, Mr. Resten met with Mr. Troy and other town officials at the Duxbuiy Senior Center. Ted Flynn, a member of the Board of Selectmen, was present. The town recreation director was present. A claims representative for the town’s insurer was present. Craig Jordan, an associate attorney with Mr. Troy’s office, was also present. Mr. Resten showed to one or more persons at the meeting a computer video of statements by Mr. Troy at a board of selectmen meeting about the golf course contract process. Mr. Resten stated at the meeting that Mr. Troy’s statements at the selectmen meeting appeared to be false. Mr. Troy in turn stated that the town’s insurer was not complying with its duiy to indemnify the town. Mr. Troy believed that Mr. Resten was protecting the insurance company’s interest.[1]
Mr. Troy had had substantial involvement in the town’s contract award process that was the subject of the Johnson Golfease. On March 14, 2012, plaintiffs counsel in the Johnson Golf case sent to Mr. Troy a notice for his deposition. The notice scheduled the deposition for April 23.
On April 4,- 2012, Mr. Troy, Mr. Resten, the town manager and the town recreation director attended a lengthy meeting at the Duxbuiy town hall regarding the Johnson Golf case. Attorney Robert Larkin was present at Mr. Troy’s request as a mediation consultant. Mr. Resten wanted to get a complete, coherent and accurate understanding about what had gone wrong with the golf course contract matter. He stated that he was concerned about the conflicting information that he had received from Mr. Troy. He wanted reliable information to assist the town in its strategy for defense or settlement of the Johnson Golf case. Mr. Troy made some statements about what he had done in the contract process. Mr. Resten believed that Mr. Troy’s statements conflicted in important ways with some of his earlier statements. The relationship between Mr. Resten and Mr. Troy during the meeting was mistrustful and contentious. The town manager left the meeting in anger before it was over.
The March 13 and April 4 meetings were not meetings that were planned or used for preparation for the Troy deposition. Other town officials were present at both meetings. Mr. Troy did not disclose at the meetings anything that was confidential to him as an *121 individual and that he did not want revealed to the other town officials who were present.
Mr. Troy was a veiy experienced attorney. He had had over twenty years of specialized experience in representing Duxbury as town counsel. Mr. Troy understood that Mr. Kesten’s client was the town. Mr. Troy understood that Mr. Kesten was not representing Mr. Troy as an individual. Mr. Troy and Mr. Kesten understood that as an attorney for the town Mr. Kesten could properly advise and assist Mr. Troy as an agent of the town but only to the extent that Mr. Troy’s interests did not conflict with the town’s interests. Both attorneys knew that the town, not Mr. Troy, was Mr. Kesten’s client. Mr. Troy knew that Mr. Kesten’s overriding duty was to the town.
On April 3, Gordon Cushing, the town recreation director, went to Mr. Troy’s office regarding the preparation of an affidavit for the Johnson Golf case. He met with Mr. Jordan, Mr. Troy and a third attorney from Mr. Troy’s office. Before this meeting, Mr. Troy and his associates had prepared an affidavit for Mr. Cushing to sign regarding the Johnson Golf case. The proposed affidavit was wrong on important fact points. Mr. Cushing told Mr. Jordan that the affidavit was not correct and that he would not sign it as drafted. Mr. Cushing worked with the attorneys in Mr. Troy’s office to revise the affidavit so that the facts were correct. After many revisions, Mr. Cushing signed a revised, correct draft of the affidavit.
Mr. Troy’s office supplied Mr. Kesten with a copy of what purported to be the affidavit signed by Mr. Cush-ing. Mr. Kesten discussed this purported affidavit with Mr. Cushing. Mr. Cushing told Mr. Kesten that this was not the affidavit that he had signed. Mr. Cushing was upset that Mr. Troy’s office had sent to Mr. Kesten an affidavit that appeared to have his signature but was not the affidavit that he had actually signed.[2]
On April 13, 2012, Mr. Troy and Mr. Jordan went to Mr. Kesten’s office in Boston to deliver copies of many documents relating to the Johnson Golf case. They did not have any meeting scheduled with Mr. Kesten or his firm. Mr. Troy and Mr. Jordan brought the document copies to Mr. Kesten’s office. They met with Mr. Kesten and Attorney Evan Oulette from Mr. Kesten’s firm.
In the April 13 meeting Mr. Troy made fact statements about his actions in the Johnson Golf matter that were inconsistent in important ways with other fact statements he had made. One dispute between Mr. Kesten and Mr. Troy in the April 13 meeting was about the affidavit that Mr. Troy’s office had sent to him that falsely appeared to have been signed by Mr. Cushing. Mr. Kesten told Mr. Troy that he thought that he was not telling the truth on important matters in the Johnson Golf case. He said that he expected that he would be testifying at bar discipline proceedings against Mr. Troy. At the end of this meeting, Mr. Troy asked Mr. Kesten if he would be preparing him for his deposition. Mr. Kesten told Mr. Troy that he needed to obtain his own lawyer.
(2) Attorney Kreiger’s Representation of the Town and the Meetings and Discussions Between Attorney Troy and Attorney Kreiger
In late April, the Board of Selectmen decided to retain an additional attorney for the town in the Johnson Golf case and to no longer have Mr. Troy as the attorney for the town in that case. On about April 24, the town hired Mr. Kreiger to represent the town in the Johnson Golf case and three other cases. The board informed Mr. Troy of this and instructed Mr. Troy to meet with Mr. Kreiger and to inform him about the Johnson Golf case.
Mr. Troy and his associate, Attorney Jordan, met with Mr. Kreiger on April 25 and 26 in Mr. Kreiger’s office. Mr. Kesten was not present. Mr. Kreiger was brand new as the town’s attorney in the Johnson Golf case and the three other Town of Duxbury cases. The purpose of these meetings was for Mr. Troy and Mr. Jordan to fully inform Mr. Kreiger about the Johnson Golfease and the three other cases. Mr. Troy and Mr. Jordan brought to Mr. Kreiger three or four boxes of court-related papers on the Duxbuiy cases. The attorneys spent about three hours on each day discussing the cases and going over the papers.
One of the topics that the attorneys discussed at the April 25 and 26 meetings was Mr. Troy’s deposition and several other pending depositions in the Johnson Golf case. Mr. Troy’s deposition had not gone forward on April 23, and it had not been rescheduled yet. The Troy deposition did not stand out as a major focus of the meetings.
Mr. Troy knew that the town was Mr. Kreiger’s client and that Mr. Troy was not Mr. Kreiger’s client. Mr. Troy knew that Mr. Kreiger’s overriding professional duly was to represent the interests of the town. Mr. Kreiger agreed to prepare Mr. Troy for the deposition and to represent him at the deposition as he would prepare and represent any other town employee or representative in a deposition in which Mr. Kreiger was serving as attorney for the town. The expected deposition preparation with Mr. Kreiger and Mr. Troy did not occur in the April 25 and 26 meetings. Mr. Kreiger and Mr. Troy agreed at the April 25 or April 26 meeting that Mr. Troy would come back on May 11 to prepare for the Troy deposition after Mr. Kreiger had a chance to review the papers, the information about the case and the anticipated testimony of several deposition witnesses. Mr. Kreiger did not tell or suggest to Mr. Troy that he would be representing him as a separate client.
The town had an attorney-client privilege regarding the information at the April 25 and 26 meetings that could be asserted or waived by the town. There is no credible evidence that Mr. Troy revealed to Mr. Kreiger at the meetings any information that was private to *122 Mr. Troy and that Mr. Troy had a client’s privilege for. In other words, there was no information revealed by Mr. Troy at these meetings that was privileged as to Mr. Troy and that could not be used on behalf of the town by Mr. Kreiger as the attorney for the town. If Mr. Troy had believed that he had some privileged information that should be kept confidential from the town, he would have declined to disclose the information to Mr. Kreiger, the town’s attorney. Mr. Troy knew that Mr. Kreiger was the attorney for the town and that any information he disclosed could be disclosed to the town by Mr. Kreiger as part of his duty to faithfully represent the town.
At some point in April or May 2012, Mr. Troy obtained Attorney George Berman of Peabody & Arnold to represent him as an individual with respect to possible attorney malpractice allegations and claims against him. At about the same time, Attorney Robert Gill of Peabody & Arnold joined Attorney Berman in representing Mr. Troy. Mr. Berman called Mr. Kreiger in early May and told him that they would be representing Mr. Troy.
Mr. Berman asked to be present with Mr. Gill for Mr. Kreiger’s May 11 deposition-preparation meeting with Mr. Troy. Mr. Kreiger agreed. On May 11 (or possibly on a rescheduled date later in May), Mr. Gill came to Mr. Kreiger’s office for the deposition preparation meeting. Through Mr. Gill, Mr. Troy declined to discuss the matter with Mr. Kreiger except on certain restrictive conditions. Mr. Kreiger informed them that Mr. Troy’s conditions were unacceptable. Mr. Troy, through Mr. Gill, declined to discuss the deposition with Mr. Kreiger. On a later date Mr. Kreiger again requested to Mr. Gill that they meet with Mr. Troy regarding the Troy deposition. Mr. Gill asserted another set of conditions that were unacceptable to the town. As a result of Mr. Troy and his attorney’s conditions, Mr. Kreiger had no discussions with Mr. Troy regarding the Johnson Golf case after their April 26 meeting.
Mr. Kreiger’s testimony at the motion hearing was reliable and convincing on the material facts.[3]
C. Additional Findings and Conclusions
The court “should not lightly interrupt the relationship between a lawyer and her client.” Adoption of Erica, 426 Mass. 55, 58 (1997). “[Disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.” Id.; Masiello v. Pertni Corp., 394 Mass. 842, 848 (1985).
In seeking disqualification of Mr. Kesten and Mr. Kreiger, Mr. Troy relies on Rule 1.9 of the Massachusetts Rules of Professional Conduct. Rule 1.9 states: “A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation.”
Rule 1.9 does not require disqualification of Mr. Kesten or Mr. Kreiger. While representing the town, Mr. Kesten met and spoke several times with Mr. Troy because Mr. Troy was co-counsel in the Johnson Golf case. Mr. Troy was also an officer of the town who had important information about the case. That information was necessary for Mr. Kesten’s representation of the town. Mr. Kreiger twice met with Mr. Troy for the same reasons shortly after Mr. Troy stopped representing the town. Mr. Troy never became a client of Mr. Kesten or Mr. Kreiger.
The court recognizes that an attorney-client relationship “may be implied when: ‘(1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney’s professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.’ ” Bays v. The-ran, 418 Mass. 685, 690 (1994); DeVawc v. American Home Assurance Co., 387 Mass. 814, 817-18 (1983). Mr. Troy sought advice and assistance from Mr. Kesten not as a client, but as co-counsel for the town and as a knowledgeable officer of the town in the Johnson Golf case. With respect to Mr. Kreiger, Mr. Troy’s two meetings with him were to inform him, on behalf of the town, of the information Mr. Kreiger would need to take over the representation of the town.
A primary purpose of Rule 1.9 is to preserve the confidentiality of information that was disclosed to the attorney by the former client during their attorney-client relationship. After an attorney-client relationship has ended, a “conflict of interest in representing a current client with interests adverse to those of a former client arises from the attorney’s duly under Canon 4 . . . [replaced by Rule 1.9] to preserve his client’s confidences and secrets.” Adoption of Erica, 426 Mass, at 60-61. Even after termination of the attorney-client relationship, “a lawyer remains bound by the Code [of Professional Responsibility] to preserve these confidences.” Id.
In this case, Mr. Troy knew that Mr. Kesten and Mr. Kreiger’s client was the town. He knew that any information he disclosed to Mr. Kesten or Mr. Kreiger was information that the attorneys would disclose to the town and to the court if it was appropriate in their duty to faithfully represent the town. Mr. Troy did not have a client’s right to confidentiality in the information that he disclosed to the attorneys for the town. The disqualification of Mr. Kesten or Mr. Kreiger is not required by Rule 1.9.
The court has also considered the fact that Mr. Kesten is likely to become a necessaiy witness in a trial of Dwcbury v. Troy, the case at bar. In the course of representing the town, Mr. Kesten witnessed what he believed to be false statements by Mr. Troy about the *123 facts of the Johnson Golf matter while Mr. Troy was serving as town counsel.
Rule 3.7(a) of the Massachusetts Rules of Professional Conduct states, with some exceptions, that a lawyer “shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness ...” Rule 3.7(a) disqualifies an attorney-witness from representing and being an advocate for the client at a trial. The rule does not disqualify an attorney from representing the client in pretrial matters. Smaland. Beach Association, Inc. v. Genova, 461 Mass. 214, 225-26 (2012).
D. Order
The defendant’s motion to disqualify Attorney Leonard H. Kesten and Attorney Arthur P. Kreiger as attorneys for the Town of Duxbury is denied.

The attorney for the plaintiff in the Johnson Golf case, Stephen Follansbee, was present at the beginning of this meeting. He began to present a settlement demand. Mr. Troy stated that they would not discuss the lengthy settlement demand any further. He instructed Mr. Follansbee to leave the meeting. Mr. Follansbee left before there was any further discussion about the Johnson Golf case.

I find Mr. Cushing’s testimony regarding his affidavit to be truthful and accurate.

The affidavit of Attorney Nina Pickering-Cook, Ex. A. for identification, has not been considered by the court on this motion. The court has also not considered the items attached to Mr. Kesten’s post-hearing memorandum that were not exhibits at the hearing.